**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| DEOSEN USA INC., ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Court No.: 26-03504 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| *Defendant,* ) | |

**COMPLAINT**

Plaintiff Deosen USA Inc. ("Plaintiff" or "Deosen USA"), by its counsel, hereby alleges

the following claims against the Defendant, the United States.

**CONTESTED DETERMINATION**

1.      This action contests U.S. Customs and Border Protection's ("CBP") affirmative

determination of evasion of the antidumping duty order on xanthan gum from China (A-570-

985) in Enforce and Protect Act ("EAPA") Consolidated Case No. 8144.  *Xanthan Gum from the*

*People's Republic of China; Amended Final Determination of Sales at Less than Fair Value and*

*Antidumping Duty Order*, 78 Fed. Reg. 43,143 (July 19, 2013) (the "Order").  CBP's Office of

Trade, Regulations and Rulings ("OT/RR") issued the final affirmative determination of evasion

on July 7, 2026, in which it affirmed, in part, the initial determination that CBP's Trade Remedy

and Law Enforcement Directorate ("TRLED") issued on February 26, 2026.  *See* Admin. Review

Determination in EAPA Consolidated Case No. 8144, CBP Office of Trade, Regulations &

Rulings (July 7, 2026) ("Final Determination").

2.      CBP's evasion determination covers xanthan gum entered by Deosen USA on or

after April 4, 2024, through the pendency of the investigation.

**JURISDICTION**

3.      Deosen USA brings this challenge to CBP's determination pursuant to 19 U.S.C. § 1517(g).

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), which provides the Court with exclusive jurisdiction over all civil actions commenced under 19 U.S.C. § 1517.

**STANDING**

5.      Plaintiff is a U.S. importer of merchandise subject to CBP's final evasion determination and is an interested party within the meaning of 19 U.S.C. § 1517(a)(6) and 28 U.S.C. § 2631(k)(1).  Plaintiff imported subject merchandise from China from its affiliated producer/exporter, Deosen Biochemical (Ordos) Ltd. ("Deosen Ordos").

6.      Plaintiff has standing to seek judicial review because it is "a person determined to have entered such covered merchandise through evasion," and is therefore adversely affected or aggrieved by agency action.  *See* 19 U.S.C. 1517(g); 28 U.S.C. § 2631(i); 5 U.S.C. § 502.

**TIMELINESS**

7.      Plaintiff is commencing this action with the concurrent filing of a summons and complaint, within 30 business days after CBP's July 7, 2026 final evasion determination.  Accordingly, Plaintiff has timely commenced this action within the time limits specified in 19 U.S.C. § 1517(g)(1).

**STATEMENT OF FACTS**

8.      On July 19, 2013, the U.S. Department of Commerce ("Commerce") published the Order.  78 Fed. Reg. 43,143.

2

9.    On March 27, 2025, CP Kelco U.S., Inc. ("CP Kelco"), a domestic xanthan gum producer, filed an EAPA allegation with CBP alleging that three U.S. importers, First Biotech Inc. ("First Biotech"), Jianlong Biotechnology Corporation, and Deosen USA, evaded the Order by undervaluing imports of subject merchandise.

10.    On April 25, 2026, CBP's TRLED initiated an EAPA investigation based on the information in CP Kelco's allegation.  At the time of initiation, TRLED did not notify Deosen USA of the EAPA investigation.  CBP subsequently issued two CF-28 Requests for Information to Deosen USA, to which Deosen USA responded on June 10, 2025.

11.    On July 31, 2025, TRLED issued a Notice of Initiation of Investigation and Interim Measures ("Initiation Notice") finding reasonable suspicion of evasion of the Order.  In its Initiation Notice, TRLED compared Deosen USA's entered values for xanthan gum purchased from Deosen Ordos, to average unit values of xanthan gum imported from other countries, including China, France, and Austria.  TRLED determined that CP Kelco's allegation "reasonably suggests that Deosen USA imported merchandise covered by the Order into the customs territory of the United States through evasion by undervaluing the merchandise in question."  Initiation Notice at 4.

12.    In addition, because certain legal questions regarding the basis for appraisement and related party transactions were not fully addressed in Deosen USA's responses to the CF-28s, TRLED determined to impose interim measures on Deosen USA's imports of xanthan gum, including:  1) suspending liquidation of unliquidated entries entered on or after April 25, 2025; 2) extending liquidation of unliquidated entries entered before April 25, 2025; and 3) additional measures, including requiring the filing of live entries.

13.    On September 17, 2025, Deosen USA responded to TRLED's EAPA Request for Information ("RFI").  The response included, among other information, detailed information and documentation on the company's corporate structure, accounting and financial practices, and sales.  On September 29, 2025, Deosen Ordos responded to a RFI issued by TRLED to Deosen Ordos and included detailed information and documentation on its corporate structure, accounting and financial practices, sales, production of xanthan gum, and reconciliations.

14.    On November 5 and 6, 2025, Deosen Ordos and Deosen USA each responded to supplemental RFIs issued by TRLED.  Deosen Ordos provided additional information requested regarding its corporate structure, the relationship between Deosen Ordos and Deosen USA, and its sales and production of xanthan gum.  Deosen USA provided additional information requested regarding its corporate structure, operations, accounting and financial practices, and sales.

15.    On November 12, 2025, TRLED placed on the record several documents from Commerce's proceedings, including (1) Deosen Ordos' Section A Response in Commerce's administrative review covering the period July 1, 2023 – June 30, 2024; (2) Deosen Ordos' Section C Response in Commerce's administrative review covering the period July 1, 2023 – June 30, 2024; (3) Deosen Ordos' Section A Supplemental Response in Commerce's administrative review covering the period July 1, 2023 – June 30, 2024; (4) Commerce's Verification Report of Deosen Ordos in Commerce's administrative review covering the period July 1, 2022 – June 30, 2023; and (5) Commerce's Verification Report of Deosen USA in Commerce's administrative review covering the period July 1, 2022 – June 30, 2023.  TRLED also placed on the record various results of Google queries regarding Deosen Ordos and Deosen USA, including maps, website printouts, and photographs.

4

16.     On December 16, 2025, Deosen USA submitted written arguments, asserting that CBP violated its due process rights, that sales from Deosen Ordos to Deosen USA are *bona fide* and conducted at arm's length, that Deosen USA correctly valued the goods it purchased from Deosen Ordos based on transaction value (i.e., the price actually paid or payable) and that the record lacks substantial evidence of undervaluation or evasion.  CP Kelco also submitted written arguments.

17.     On January 7, 2026, Deosen USA responded to CP Kelco's written arguments, and on January 9, 2026, CP Kelco responded to Deosen USA's written arguments.

18.     On February 26, 2026, TRLED issued its determination of evasion ("Initial Determination"), finding that sales between Deosen Ordos and Deosen USA were not *bona fide* sales.  Although Deosen USA presented evidence and arguments that the circumstances of sale demonstrate that the relationship between Deosen Ordos and Deosen USA does not influence the price actually paid or payable, TRLED found the issue "moot" because of its *bona fide* sales determination.  Initial Determination at 14-15, n. 89.

19.     On April 9, 2026, Deosen USA requested an administrative review of the Initial Determination with OT/RR.  Deosen USA argued that TRLED did not provide it with notice and a meaningful opportunity to be heard prior to imposing interim measures, thereby violating Deosen USA's due process rights.  It established that TRLED erred in finding that sales between Deosen Ordos and Deoson USA were not *bona fide* sales.  It also reiterated its position, which TRLED did not address in the Initial Determination, that the circumstances of sales between the two companies demonstrate that their relationship does not influence the price actually paid or payable because the price was established consistent with the normal pricing practices of the

industry, because the companies settle prices as if they were unrelated, and because the prices between the companies are adequate to ensure recovery of all costs plus a profit.

20.    In addition, Deosen USA contended that TRLED's conclusion of "undervaluation" is flawed because TRLED's recalculation of entered values relied on an alleged fallback deductive value method that was unsupported, unreasonable, and in violation of established customs valuation laws, and in particular, with the statutory valuation hierarchy provided in 19 U.S.C. § 1401a.  Moreover, Deosen USA contended that even if CBP disagreed with its use of transaction value, such a disagreement over the proper method of appraisement is not evasion within the meaning of the EAPA statute because it does not equate with entering covered merchandise by means of a material and false information or act.

21.    On July 1, 2026, OT/RR requested that First Biotech submit Commerce's June 11, 2026 post-preliminary analysis in the 11th administrative review of the Order (period of review 7/1/2023 – 6/30/2024), in which Commerce applied facts otherwise available with an adverse inference ("AFA") to Deosen Ordos based on TRLED's initial determination of evasion with respect to Deosen USA, resulting in a dramatic increase of Deosen Ordos' preliminary dumping margin from zero to 22.22 percent.  On July 2, 2026, First Biotech submitted Commerce's post-preliminary analysis to OT/RR.

22.    On July 7, 2026, OT/RR reversed TRLED's finding of no *bona fide* sales in the Initial Determination and correctly determined that sales between Deosen Ordos and Deosen USA are indeed *bona fide* sales.  Final Determination at 21-23.  Notwithstanding this determination, OT/RR continued to find that Deosen USA entered covered merchandise through evasion by undervaluation based upon a different rationale.

6

23. Specifically, OT/RR determined that Deosen USA failed to establish that its relationship with Deosen Ordos did not influence the price actually paid or payable. First, in evaluating the "all costs plus a profit test," OT/RR compared Deosen Ordos' operating profit on sales of xanthan gum to Deosen USA with Deosen Ordos' operating profit on its total sales of xanthan gum. Despite a small and insignificant difference between the operating profits compared, OT/RR determined that the profits are not equivalent, and thus, that the all costs plus a profit test was not met. Second, despite evidence that Deosen Ordos and Deosen USA consider the pricing practices of other companies in the industry, OT/RR found that the companies did not settle prices consistent with the normal pricing practices of the industry, without defining what the industry's normal pricing practice would be. Third, OT/RR found Deosen USA's examples and arguments that the companies settle prices as if unrelated to be unpersuasive.

24. Based on these determinations, OT/RR found that "when Deosen USA declared the transaction value as the entered value of the covered merchandise on its entries, Deosen USA submitted false statements to CBP." Final Determination at 26. It further determined that the false statements were material because "they resulted in undervaluation of the merchandise and the antidumping duties and/or cash deposits being reduced or not being applied" under the Order. Final Determination at 26.

25. To determine whether there was "undervaluation," OT/RR purportedly considered the methods of appraisement set forth in 19 U.S.C. § 1401a in sequential order. After finding that the methods set forth in 19 U.S.C. § 1401a(b)-(e) were not available, OT/RR arrived at the last available method listed in the statute, the "fallback" method under 19 U.S.C. § 1401a(f). Using the shipping manifest data CP Kelco submitted in its evasion allegation, including data on shipments of xanthan gum by Austrian producer Jungbunzlauer Austria AG ("JBL") and data on

CP Kelco's purchases of xanthan gum from its affiliated Chinese supplier, OT/RR recalculated Deosen USA's entered values of the four sample entries subject to CBP's RFIs by replacing Deosen USA's declared values with the range of unit values submitted by CP Kelco. It then determined that Deosen USA undervalued its imports of subject merchandise because the entered values were "substantially lower" than the "recalculated values." Final Determination at 27-29. As a result of its analysis, OT/RR concluded that Deosen USA undervalued merchandise. Final Determination at 29.

26. In addition, OT/RR rejected additional arguments made by Deosen USA, including the argument that TRLED violated Deosen USA's due process rights when it imposed interim measures, and the argument that TRLED improperly recalculated Deosen USA's appraised values. Final Determination at 31.

## STATEMENT OF CLAIMS

### COUNT ONE

27. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 26.

28. The record supports Deosen USA's use of transaction value as the appropriate method of appraisement. The circumstances of sales between Deosen Ordos and Deosen USA demonstrate that their relationship does not influence the price actually paid or payable because prices were established consistent with the normal pricing practices of the industry, because the companies settle prices as if they were unrelated, and because the prices between the companies are adequate to ensure recovery of all costs plus a profit.

29. CBP's determination to the contrary is unsupported by substantial evidence, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

**COUNT TWO**

30.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 29.

31.    To find evasion, EAPA requires that CBP determine that the entries at issue were made by means of material and false information, statement, act, or omission, that results in the underpayment of antidumping duties or cash deposits.

32.    Deosen USA exercised reasonable care in appraising its goods based on transaction value and did not provide or make material and false information, statements, acts, or omissions.  Moreover, even if it is determined that transaction value is not available, the statute at 19 U.S.C. § 1401a mandates a sequential list of alternative methods of appraisement that should be used.

33.    CBP's determination that Deosen USA's use of transaction value was incorrect and therefore constitutes a material false statement is unsupported by substantial evidence, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

**COUNT THREE**

34.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 33.

35.    CBP's determination that it did not have the necessary information to determine the customs value based on the valuation methods hierarchy in 19 U.S.C. § 1401a does not justify skipping over various methods specified in the statute and relying on the fallback method.

36.    Moreover, even if the fallback method were appropriate, CBP erred in its methodology where it simply substituted Deosen USA's entered values of four entries with the selective values CP Kelco submitted on the record.

37.    CBP's reliance on the alleged fallback method, the methodology employed when using the fallback method, and the resulting conclusion of undervaluation and evasion are

unsupported by substantial evidence, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

**COUNT FOUR**

38.     Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 37.

39.     The U.S. Court of Appeals for the Federal Circuit has determined that "evasion proceedings enjoy rights to procedural due process" and that importers have "the right to notice and a meaningful opportunity to be heard." *Royal Brush Mfg. v. United States*, 75 F.4th 1250, 1257 (Fed. Cir. 2023).

40.     Moreover, this court has found that CBP's "regulation at 19 C.F.R. § 165.15(d)(1) is arbitrary, capricious, and not in accordance with law because the regulation does not provide an importer participating in an administrative review with a procedural due process right to notice and a meaningful opportunity to be heard." *Superior Commercial Sols., LLC v. United States*, 811 F. Supp. 3d 1363, 1377 (Ct. Int'l Trade 2025), *appeal docketed* No. 2026-1376 (Jan. 26, 2026).

41.     TRLED relied on 19 C.F.R. § 165.15(d)(1) when it issued its Initiation Notice and its decision to impose interim measures.  In doing so, it violated Deosen USA's due process rights and tainted the EAPA investigation.  CBP's reliance on an unlawful regulation is unsupported by substantial evidence, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

**PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, Plaintiff prays that this Court enter judgment as follows:

(1)     enter judgment in favor of Plaintiff;

(2)    hold that CBP's evasion determination is unsupported by substantial evidence, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law;

(3)    declare that the circumstances of sales between Deosen Ordos and Deosen USA demonstrate that their relationship does not influence the price actually paid or payable;

(4)    remand CBP's evasion determination to CBP with instructions to terminate the investigation;

(5)    award Plaintiff costs and any reasonable attorneys' fees and expenses; and

(6)    grant such other and further relief as this Court may deem appropriate.

Respectfully submitted,

/s/ Lian Yang

Lian Yang
Elio Gonzalez
ALSTON & BIRD LLP
950 F St N.W.
Washington D.C. 20004
(202) 239-3490
Lian.Yang@alston.com

*Counsel for Deosen USA Inc.*

August 6, 2026